UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDY NGUYEN,

      Petitioner,

                                 CASE NO. 5:09-CV-10607

v.                               HONORABLE JOHN CORBETT O'MEARA
                                 UNITED STATES DISTRICT JUDGE

NICK J.LUDWICK,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      Andy Nguyen, ("Petitioner"), presently confined at the Mound Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed by attorney Kenneth M. Mogill, petitioner challenges his conviction for assault with intent to commit murder, M.C.L.A. 750.83; and felony-firearm, M.C.L.A. 750.227b.  For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

## I.  Background

      Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In October 2005, defendant and his then wife, Nhung Le, stopped living with
> one another.  Le went to work for Dung Hong, the owner of the Golden Nail

1

Salon in Westland. She also lived with Hong and his wife, Ha Thi To, for a two-month period after moving out of the marital home. According to Le, defendant did not want her to work at the salon.

On January 7, 2006, defendant came to the salon with his brother. According to To, defendant told her that she had two weeks to fire Le, or else there would be consequences. The police were called and an officer then called defendant and told him that if he returned to the salon he would be arrested. Defendant responded by telling the officer that he would return to the salon. Later that day, defendant did go back to the salon and the police were again called to the scene. Defendant testified that he did not threaten anyone on January 7, 2006, and that he went to the salon to offer his wife money to move out of the state.

On February 25, 2006, defendant purchased a firearm. [1]  Defendant took his newly purchased firearm to the Dearborn Heights Police Station on February 28, 2006, to get his safety certificate. After receiving the certificate, defendant went to the firing range. When defendant left the range, he put his gun in his pocket and had two clips of ammunition remaining.

While driving home, defendant decided to go to the Golden Nail Salon to once again offer Le money to leave the state. According to defendant, Le wanted to move out of Michigan. Defendant entered the front door of the salon and asked To where Hong was. Defendant claims that he asked for Hong so that he could ask Hong for permission to talk with Le. To informed defendant that Hong was in the salon's back room.

There is conflicting testimony about the events that occurred after defendant entered the salon's back room. According to Hong, he was sitting in the back room eating lunch, and when he looked up, defendant was standing near him and pointing a gun at him. Defendant then told Hong that he was going to kill him. Hong then heard a clicking noise, implying that defendant pulled the trigger on the gun and the gun misfired. Hong then tackled defendant as he was attempting to reload the weapon. Le similarly testified that she saw defendant pull out the firearm and then heard a clicking noise before Hong tackled him. The two men wrestled for the firearm and at least four shots were fired. Hong testified that he eventually wrestled the firearm away from

---

[1]  According to defendant, who moved to the United States from Vietnam, when he arrived in America he wanted to exercise his freedom and learn how to use a firearm. (Footnote original).

defendant.  At that time, defendant ran out the back door of the salon and Hong ran out the front door.

According to defendant, he entered the back room and had a conversation with Le, who was vacuuming at the time.  During the conversation, defendant was standing with his back to Hong.  Defendant told Le that Hong was using her and that she should leave the salon.  Hong then struck defendant in the back of the head with a hard object.  Hong tackled defendant and a struggle ensued. In an attempt to force Hong to retreat, defendant pulled his gun from his pocket.  According to defendant, he brought the firearm into the salon because the lock on his car door was not working.  Hong grabbed for the firearm and the two continued to wrestle over the gun for five minutes.  Hong eventually gained control over the weapon.  He then tried to shoot defendant but missed, striking the ceiling.  Hong then fired a second shot at defendant, who ducked and avoided the bullet.  Defendant then fled out the back of the salon, with Hong firing two more shots at him as he ran.  According to defendant, he never fired the weapon at the salon.

While several witnesses saw the two men wrestling for the weapon, none of them saw which man fired the shots.

*People v. Nguyen,* No. 274031, * 1-2 (Mich.Ct.App. March 13, 2008).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 482 Mich. 896, 753

N.W.2d 178 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Where, as here, numerous witnesses had minimal ability to understand or express themselves in English, and where a qualified translator was present and available, it was a substantial violation of Petitioner's right to due process, confrontation, and a fair trial for the trial court not to require that a translator be used as to the witnesses' entire testimony rather than sporadically.

II. Petitioner was deprived of a fair trial due to prosecutorial misconduct where the prosecutor filed a false notice under MRE 404(b) and made a false and unsupported argument during opening statement that Petitioner had threatened to kill three people, including the complainant, during an alleged earlier incident.

3

III. Petitioner was deprived of his rights to due process and confrontation where the trial court barred defense counsel from confronting prosecution witnesses with defense evidence rebutting the prosecution's MRE 404(b) allegations.

IV. The trial court's failure to instruct on petitioner's right to use non-deadly force in self-defense deprived Petitioner of due process.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

4

federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be."

5

*Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

## III. Discussion

### A. Claim # 1. The intermittent translation claim.

Petitioner first claims that his due process right to a fair trial and his right to confrontation was violated because the trial judge urged several of the witnesses, who were natives of Vietnam, to try to answer the lawyers' questions in English and to only use a court interpreter, who was available, when they were unable to effectively communicate in the English language.

Respondent contends that petitioner's first claim is procedurally defaulted

6

because counsel failed to preserve the issue at trial and as a result, the Michigan Court of Appeals reviewed the claim for plain error only. Petitioner, on the other hand, contends that the claim was preserved for appeal, because both the prosecutor and defense counsel did bring the potential language difficulties of the witnesses to the trial judge's attention and urged him to employ the intepreter to translate from English to Vietnamese and back again.

In the present case, although defense counsel did not formally object to the sporadic use of an interpreter for these witnesses, both he and the prosecutor did bring the potential linguistic difficulties of these witnesses to the judge's attention. The Supreme Court has observed that "[a]n objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review." *Douglas v. State of Ala.*, 380 U.S. 415, 422 (1965). Indeed, "[N]o legitimate state interest" is served "by requiring repetition of a patently futile objection," which has been rejected several times, "in a situation in which repeated objection might well affront the court or prejudice the jury beyond repair." *Id.* By bringing the witnesses' potential linguistic difficulties to the attention of the judge, defense counsel arguably preserved this issue for appellate review, in spite of the Michigan Court of Appeals' finding to the contrary. *See e.g. Gonzalez v. U.S.*, 697 A.2d 819, 823-24 (D.C. App. 1997)(issue of interpreter competence was sufficiently preserved for appellate review where defendant brought mistranslation to court's attention, which

7

permitted court to take corrective measures); *United States v. Urena*, 27 F. 3d 1487,

1491-92 (10th Cir. 1994)(specific, contemporaneous objections to mistranslations, though

preferable, are not required; generalized objections are sufficient).

Moreover, this Court notes that procedural default is not a jurisdictional bar to

review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In

addition, "[F]ederal courts are not required to address a procedural-default issue before

deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th

Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy

might counsel giving the [other] question priority, for example, if it were easily

resolvable against the habeas petitioner, whereas the procedural-bar issue involved

complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In light of the complexity of

the procedural default issue, the Court deems it more efficient in this case to proceed

directly to the merits of petitioner's claim.

In reviewing petitioner's claim for plain error, the Michigan Court of Appeals

rejected petitioner's claim:

> While the trial court certainly appears to have had a strong preference for the
> Vietnamese-speaking witnesses to testify without an interpreter where
> possible, the court clearly instructed each witness that if they were unable to
> proceed in English, they should indicate such to the trial court so that the
> interpreter could assist them.  Based on a review of the record, each of the
> Vietnamese witnesses does appear to struggle with the English language at
> times.  However, in each such instance, the interpreter would be used or the
> attorneys would re-word the questions in a simpler form.  At no point were
> the witnesses unintelligible or incomprehensible.  As a result, it cannot be said
> that the trial court abused its discretion in establishing a preference for
> unaided testimony.  Therefore, defendant cannot establish a plain error that

8

affected his substantial rights.

*Nguyen,* Slip. Op. at * 3.

Habeas corpus relief is available only if a petitioner can demonstrate that a trial court's action regarding the use of an interpreter denied petitioner a fundamentally fair trial. *Montano v. Shelton*, 961 F. Supp. 252, 255 (D. Kan. 1997)(citing *United States v. Sanchez*, 928 F. 2d 1450, 1455 (6th Cir. 1991)).  Normally, however, rulings on the appointment and qualifications of an interpreter do not reach constitutional proportions. *See Fairbanks v. Cowan*, 551 F. 2d 97, 99 (6th Cir. 1977).

The Court has reviewed the testimony of the three prosecution witnesses, Nhung Le (Tr. 8/29/2006, pp. 101-122); Ha Thi To (*Id.* at pp. 123-146); Dung Hong (Tr. 8/30/2006, pp. 20-49), as well as petitioner's own testimony.(*Id.* at pp. 57-111).  All of the witnesses appeared able to respond appropriately to questions asked of them in English by either the judge or the attorneys.  Although each of the witnesses at times struggled with the English language, when the witness had difficulty with a question or with giving an answer, the interpreter was employed or the attorney would re-phrase the question.  The trial judge never prevented the witnesses from utilizing the services of the interpreter, but merely asked each witness to answer in English if they could.  The judge further advised each witness that if they had problems with a particular question or with giving an answer, they could ask the interpreter to translate for them.

In the present case, the intermittent use of the interpreter to translate the questions and answers for the witnesses did not deny petitioner a fair trial, in light of the fact that

9

each witness "credibly maintained the central thread of his [or her] testimony" during direct and cross-examination. *See U.S. v. Damra*, 621 F. 3d 474, 498 (6th Cir. 2010)(district court's error in appointing the government's lead criminal investigator as an interpreter for a government witness, in defendant's trial, did not affect the outcome of the proceedings, as required to constitute plain error; government witness credibly maintained the central thread of his testimony, both while being cross-examined by defendant and while being asked questions on direct examination the previous day, before the lead criminal investigator was appointed); *See also United States v. Camejo*, 333 F. 3d 669, 673 (6th Cir. 2003)(district court's failure to replace an interpreter who was "not a model of clarity and efficiency" was not plain error requiring reversal when the court addressed any problems in interpretation as they arose).

In light of the fact that the witnesses were able to adequately communicate in the English language and were able to utilize the services of a Vietnamese interpreter when they could not do so, this Court concludes that petitioner is unable to establish that the Michigan Court of Appeals' rejection of his first claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The prosecutorial misconduct claim.

Petitioner next contends that he was denied a fair trial when the prosecutor stated during his opening statement that the evidence would show that petitioner had

10

previously threatened the lives of his wife, Ha Thi To, and Dung Hong.

Respondent contends that petitioner's claim is procedurally defaulted, because he failed to object to the remarks at trial. Petitioner argues that his trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in

11

prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). In deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *See Pritchett v. Pitcher*, 117 F. 3d at 964.

In rejecting petitioner's claim, the Michigan Court of Appeals concluded:

> The record indicates the prosecutor had a good faith belief that defendant threatened Le, To, and Hong and made repeated attempts during trial to elicit testimony regarding that threat. If the prosecutor had described the potential evidence in his opening statement in bad faith, it is doubtful that he would have continuously questioned the witnesses regarding the alleged threat and provided them numerous opportunities to inform the jury that no such threat was ever made. While the prosecutor was not able to establish that any threat was made on the lives of Hong, To and Le, defendant has failed to show his comment during his opening statement was made in bad faith.

> Additionally, defendant cannot establish that he was prejudiced by the prosecutor's comments. Before the prosecutor's opening statement, the trial court explained to the jurors that they alone were the finders of fact and that the facts were to be determined by the evidence. The trial court continued and explained that the statements of the attorneys were not to be considered as evidence. At the close of trial and before deliberation, the trial court once again instructed the jurors that they should base their decision on the evidence and specifically stated that the opening statements were not part of the evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." Even if it was improper for the prosecutor to indicate that he would establish that defendant had made threats to the lives of Hong, To, and Le on a prior occasion, defendant has not established that the statement denied him a fair trial because he has not shown that the trial court's instructions were insufficient to cure any alleged error.

*Nguyen,* Slip. Op. at * 4 (internal citation omitted).

Not every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he expects to introduce and the

12

actual presentation constitutes reversible error, when a proper limiting instruction is given. *See Frazier v. Cupp*, 394 U.S. 731, 736 (1969). In the present case, the trial court instructed the jurors both at the beginning and the end of trial that the lawyers' opening statements were not evidence. (Tr. 8/29/2006, p. 9; Tr. 8/30/2006, p. 146). A jury must be presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000). In this case, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice petitioner, in light of the trial court's limiting instruction to the jury. *See United States v. Campbell,* 317 F. 3d 597, 606-07 (6th Cir. 2003)(prosecutor's opening statement in narcotics prosecution, which referred to expected testimony of witness who subsequently did not testify at trial, did not prejudice defendants, where jury was instructed that statements of attorneys were not evidence, and there was no indication that the jury was unable to follow the court's instructions).

Petitioner further claims that the prosecutor committed misconduct by referring to petitioner's "warped, evil sense of honor" in both his opening and closing statements, and by referring to petitioner as an "evil aggressor" in his closing statement. The Michigan Court of Appeals rejected petitioner's claim:

> While the prosecutor's classification of defendant as evil was indeed intemperate, it was not prejudicial. It appears that the prosecution secured defendant's conviction on the basis of the strong eyewitness testimony of Hong and Le. Defendant does not establish that the result of the proceedings would have differed but for the comments of the prosecutor. Further, as stated above, the trial court instructed the jury on not considering the statements of the attorneys as evidence. Defendant has not demonstrated that

13

the jurors disregarded the trial court's instructions.

*Nguyen,* Slip. Op. at * 4-5.

The prosecutor's brief comments that petitioner was "evil" did not rise to the level of a constitutional violation. *See Hutchison v. Bell*, 303 F. 3d 720, 750-51 (6th Cir. 2002)(denying habeas claim of prosecutorial misconduct based on references to defendant as having "evil ways" and being "an evil force"). This would be particularly so in light of the fact that the jurors were instructed that the lawyers' arguments were not evidence. Moreover, in light of the strong evidence against petitioner, the prosecutor's comments were harmless error at worst. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The right to present a defense claim.

Petitioner next contends that he was deprived of his right to present a defense when the trial judge did not allow him to introduce evidence concerning his wife's ineligibility to work in the United States. Petitioner claims that this evidence would have established that petitioner believed that the victim Dung Hong was employing his wife illegally. In turn, petitioner argues that evidence that petitioner believed that his wife was being employed illegally would have established that he did not previously threaten to kill Hong nor did he intend to kill him on the day in question. Petitioner further contends that this evidence would establish that the victim was the aggressor.

In rejecting this claim, the Michigan Court of Appeals indicated:

Defendant's appeal is based on the false premise that the trial court excluded

14

all testimony regarding the meaning of his statement on January 7, 2006, when he told To and Hong that there would be consequences if Le continued to work at Hong's salon. In reality, the trial court properly excluded two questions to To, each of which asked her to speak to the mindset or intention of Hong or defendant. Before that, the trial court allowed To to answer a question regarding Le's work status that did not call for speculation. To testified that she did not know Le's work status. There is no evidence that the trial court would have excluded questions to defendant, Hong, or Le regarding work status. Defense counsel's decision to not further pursue the issue of Le's work status with other witnesses may represent a strategic decision or may be the result of trial counsel's misunderstanding regarding the trial court's position on the issue. In either instance, it cannot be said that the trial court abused its discretion in excluding evidence of Le's work status when it was merely excluding questions that were asked in an improper form.

*Nguyen,* Slip. Op. at * 5.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary

rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679  (1986)).  Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

In the present case, the trial court judge's decision to preclude defense counsel from asking questions to Ms. To which called for her to speculate about the mindset of her husband or petitioner did not deprive petitioner of a fair trial, because testimony beyond the witness's personal knowledge would have violated M.R.E. 602 and was therefore properly excluded under the rules of evidence. *See McCullough v. Stegall,* 17 Fed. Appx. 292, 296 (6th Cir. 2001).

Moreover, the trial court judge did not prohibit defense counsel from asking Le, Hong, or petitioner about whether Le was employed illegally by Hong and whether this was the actual cause of friction between the victim and petitioner. Instead, it appears that for whatever reason, counsel decided to forego asking any of the other witnesses this line of questioning. Petitioner cannot convert a tactical decision not to introduce evidence into a constitutional violation of the right to present evidence generally. *See Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1150 (D. Colo. 1999); *See also State v. Flood,* 219 S.W. 3d 307, 318 (Tenn. 2007)("Generally, the right to present a defense is not denied when a defendant does not pursue a line of questioning during cross-examination"). Petitioner is not entitled to habeas relief on his third claim.

### D. Claim # 4. The instructional error claim.

Petitioner lastly claims that the trial court erred in failing to give the jury an instruction on self-defense.

Respondent contends that petitioner's claim is procedurally defaulted, because counsel agreed that a self-defense instruction was not called for in this case. Petitioner argues that his trial counsel was ineffective for acquiescing to the trial judge's ruling that the facts of the case did not call for a self-defense instruction. As mentioned when discussing petitioner's second claim above, because the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d at 836.

17

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Hardaway v. Withrow,* 305 F. 3d 558, 565 (6th Cir. 2002).

A defendant is entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). When there is evidentiary support for a defendant's theory of self-defense, a failure to instruct the jury on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights. *Everette v. Roth*, 37 F. 3d 257, 261 (7th Cir. 1994). Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999)(citing to *People v. Heflin*,

18

434 Mich. 482; 456 N. W. 2d 10 (1990)).

In the present case, although petitioner claimed that he pulled the gun out after the victim had hit him with an object, he further testified that the victim grabbed the gun away from him during a struggle and that it was the victim who fired the gun.  Petitioner testified that he did not fire the weapon.

In *Taylor v. Withrow*, 288 F. 3d 846 (6th Cir. 2002), a case almost directly on point, the Sixth Circuit held that state trial court's ruling that there was no evidence of justified self-defense, and its consequent refusal to instruct the jury on self-defense and imperfect self-defense, did not involve either an unreasonable determination of the facts or an unreasonable application of clearly established federal law, so as to warrant habeas relief, where the petitioner testified at his murder trial that he pulled his gun as a defensive act but that he did not intentionally shoot the victim to defend himself, and that, instead, the gun discharged accidently. *Id.* at 853-54.  In so ruling, the Sixth Circuit noted that under Michigan caselaw, a defendant cannot claim justified self-defense as a defense to homicide unless the defendant claims that the killing was intentional. *Id.* at 853(internal citation omitted).

In the present case, petitioner testified that he never fired the weapon.  Because there was no evidence that petitioner shot the weapon, the trial court judge's determination that there was no evidence to support a self-defense instruction was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on his fourth claim.

19

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V.  <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

20

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**


s/John Corbett O'Meara
United States District Judge

Date:  March 15, 2011




I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 15, 2011, using the ECF system.


s/William Barkholz
Case Manager